# CHARLES OLSON v. JOSEPH GIBSON COMPANY.[1]

June 9, 1911.

Nos. 17,144—(84).

**Defective appliance — proximate cause of injury.**
In this a personal injury action, *held*, the evidence was sufficient to justify the jury in finding that the breaking of the fid hook, which locked the binding chain on a load of logs, was the proximate cause of decedent's injuries and death, that the hook was defective, and that the defect would have been discovered on proper inspection.

**Questions for the jury.**
The jury were entitled to pass on the questions of contributory negligence and assumption of risk.

Action in the district court for Polk county by the administrator of the estate of Henry Olson, deceased, to recover $2,000 for the death of his intestate. The complaint alleged that defendant negligently furnished decedent a double bitted axe, which was unsafe because the handle was only three feet in length; that decedent had asked the foreman and had been promised a pole axe with a longer handle, upon which promise decedent relied, and defendant had negligently furnished a defective grab hook which was unsafe in that it was cracked at the bend, of which condition plaintiff had notice. The answer alleged that on February 26, 1909, deceased attempted to knock out a certain hook that held the chain upon a load of logs with an axe, and finally succeeded after repeated blows in releasing or breaking the hook, causing the logs upon the sleigh to fall upon him and resulting in his death; denied any knowledge as to the age of deceased, but admitted that he was earning $2.50 per day. The answer further alleged that the death of deceased was the result of risks and dangers that were open and apparent or was the result of his own negligence. The reply was a general denial. The case was tried before Watts, J., and a jury which returned a

[1] Reported in 131 N. W. 637.

verdict in favor of plaintiff for $1,200. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Theo. Hollister* and *J. A. P. Neal,* for appellant.
*Andrew Nelson,* for respondent.

LEWIS, J.

While driving out a fid hook in a binding chain on a load of logs, plaintiff's intestate was caught by the logs, which fell and so severely injured him that he died within two days.˙ The logs were loaded on a sled, and the unloading gang consisted of four men, including Olson. The landing gang started to break a certain load, which sagged out on the side over the end of the front bunk. This sagging and the logs on the top of the chain made the front wrapping chain, which was between three and four feet from the front end, fit rather tight around the load. The fid hook which held the front binding chain was about six feet above the ground on the right side of the load, and pointed toward the rear end. The rear chain was loosened by Cameron, whereupon Wanski started to knock the front fid hook loose with an axe. Wanski, taking a position opposite to the fid hook and about three feet from the front end of the load, struck the hook several times; but it did not release. After Wanski failed to loosen the fid hook, he handed the axe to Olson. The axe was a double-bitted one, with a handle about three feet in length.

Olson assumed about the same position that had been occupied by Wanski, made necessary by the fact that the fid hook pointed towards the rear end of the load. Olson's back was toward the front end of the load, and after he struck the first blow he went up to see if the hook had moved. It had not moved, and he tried to straighten it a little, so as to hit it more squarely. He then struck the shank of the hook a second time without effect. He then looked at the position of the hook a second time, and struck the final blow. The chain was then about an inch and a half from the point of the hook. When the final blow was struck, the fid hook suddenly and unexpectedly broke, allowing the logs to come down rapidly with-

out any warning. He tried to run away from the side and to the front end of the load, making an angle of about forty-five degrees to the general direction of the load, but was caught by the logs about eight feet from the side of the load. A number of logs rolled upon his body, crushing his bones and so seriously maiming him that he died two days later. When he was picked up, his head was found to the front of the load.

The negligence relied on consisted in furnishing a defective fid hook. It was clearly established that the fid hook broke, and the evidence fairly tended to show that the logs were released as a result of the break, and that the breaking of the hook was the proximate cause of the injury. The fid hook was made of steel, about one-half of an inch thick by nine inches long. The shank was one inch wide at the lower end or point, and one and a half inches wide at the hook end. The point of the hook was two and three-quarter inches long and the opening, into which a link of the binding chain was intended to fit, was three-quarters of an inch wide at the lower end and about one-half inch at the upper end. The width of the hook at the upper end, at the turn or bend, was one and one-eighth inches. On the inside of the turn there was a flaw or opening extending about three thirty-seconds of an inch deep and about five-sixteenths of an inch in length, and at the outside of the curve the steel was only one-quarter of an inch thick. The hook broke off at this point in line with the flaw.

1. It was the opinion of the expert witnesses that the flaw occurred in the making of the hook, that it was in that part where the greatest strain came in the use of the chain, and that the defect would have been discernible on inspection before it broke. Although some of these witnesses were not very positive in cross-examination that the wearing of the chain might not have tended to cover up the flaw, the testimony as a whole was for the consideration of the jury. The strain upon such hooks is very great, and their use is attended with danger. The rule is that the master is required to exercise reasonable diligence in the examination and supervision of such appliances, and the measure of care and diligence must be proportioned to the risk and danger to be apprehended. Moon v. North-

ern Pacific R. Co. 46 Minn. 106, 48 N. W. 679, 24 Am. St. 194; Thompson v. Great Northern Ry. Co. 79 Minn. 291, 82 N. W. 637; Patterson v. Melchior, 106 Minn. 437, 119 N. W. 402. We consider the evidence sufficient, if accepted by the jury, to warrant them in finding that the defect was of such a character as to require the master to discard the hook upon the discovery of its condition, and also that the breaking of the hook was the proximate cause of the accident.

2. Considering the position of the fid hook and the character of the implement furnished by the master, it was a question for the jury whether Olson was guilty of contributory negligence or assumed the risk. Orcutt v. J. Neils Lumber Co. 113 Minn. 331, 131 N. W. 464.

We discover no errors in the instructions, and under the circumstances the verdict was not excessive.

Affirmed.